Kellogg *v.* Barber.

[ALBANY GENERAL TERM, May 3, 1852. *Parker, Wright* and *Harris,* Justices.]

---

### KELLOGG *vs.* BARBER and MANN.

On the 15th of January, 1849, S. executed to K. & Co. an assignment of his books of account, and of the moneys due thereon. The object of the assignment was expressed to be " for the payment of my indebtedness to them, due and to become due, and to account to me for any overplus there may be, over paying such indebtedness to them." And K. & Co. agreed to apply the avails of the debts collected, as provided for in the assignment. At the date of the assignment S. owed K. & Co., on account, over $1000, and K. & Co. were indorsers on a note of S. for $500, not then due, but

which K. & Co. subsequently paid.  They had also indorsed, for the accommodation of S., a check made by him for $225, and advanced the money on it, to him.  K. & Co. collected on the books of S. over $1600, which they applied in payment of the account, and indorsed the balance on the $500 note.  In an action by the holder of the check against the defendants as indorsers, the defendants claimed that the money received ought to have been applied on the check instead of the note, and that the note was paid.  It appearing that the assignment was made for the purpose of securing the payment of the account and the $500 note, and with an implied, if not an express agreement, that K. & Co. should pay the note;  *Held,* the note might properly be considered an indebtedness *to become due,* within the terms of the assignment, and that K. & Co. had a right to apply the moneys received by them, towards its payment, instead of paying the check.

THIS action was brought to recover against the defendants as indorsers of a check, of which the following is a copy:

" Cashier of the Farmers' Bank, pay Bela Barber, or bearer, two hundred and twenty-five dollars — cents.

    $225.                          JAMES SWART."

              Indorsed as follows:

                " Bela Barber,

                Francis N. Mann.

Pay Day O. Kellogg or order without recourse.

                                KELLOGG & Co."

The cause was referred to a referee, who reported in favor of the defendants, and the plaintiff appealed.  The facts are sufficiently stated in the opinion of the court.

*Job Pierson,* for the plaintiff.

*A. B. Olin,* for the defendants.

*By the Court,* PARKER, J.   It appeared on the trial that the check in question was made as early as the 12th of January, 1849, and indorsed by the defendants for the accommodation of Swart, and the money advanced on it to Swart by Kellogg & Co., of which firm the plaintiff was a member.  It was deposited in the Commercial Bank of Troy to the credit of Kellogg & Co., before the 15th of January, but was not paid when it fell due,

Kellogg *v.* Barber.

on the 18th.   On the 15th of January, 1849, James Swart exe-
cuted to Kellogg & Co. an assignment of his books of account
and of the moneys due thereon.   The object of the assigment
was expressed therein as follows, viz.  " for the payment of my
indebtedness to them due and to become due, and to account to
me for any overplus there may be over paying such indebtedness
to them."   At the same time a paper was executed to them by
Kellogg & Co. and delivered to Swart, agreeing to apply the
avails of the debts collected as provided for in the assignment.

At the time of the assignment Swart owed Kellogg & Co.,
on account, over $1000, and Kellogg & Co. were indorsers on
a note of Swart for $500, not then due, but which Kellogg & Co.
subsequently paid.   Kellogg & Co. collected, on the books of
Swart, over $1600, which, after taking out their commissions,
they applied in payment of the account, and indorsed the balance
on the $500 note.   The referee held that the check was a por-
tion of the indebtedness from Swart to Kellogg & Co., and that
the $500 note was not an indebtedness due or to become due to
Kellogg & Co., but was, at the time of executing the assignment,
a mere contingent liability, and not provided for in the assign-
ment.   If the referee was right in thus holding, he was also
right in the legal consequence, that the money received ought
to have been applied on the check instead of the note, and that
the check was paid.   It would certainly have been a more de-
finite and more usual mode of expression, in the assignment, to
have called the $500 note a contingent liability, instead of an
indebtedness to become due.   Such is the expression employed
in the code, (*sec.* 383,) which authorizes the taking of a judg-
ment by confession as security, " either for money due or to be-
come due, or to secure any person against contingent liability
on behalf of the defendant."   Yet it would be no very broad in-
terpretation of the language, unexplained, to say that " an in-
debtedness to become due," would include an indebtedness to
arise on the payment by the assignee, of a note on which he was
then contingently liable as indorser.   And if, in addition to the
contingent liability, it appeared that the indorser had assumed
to pay, or that the parties expected he would pay the note

when due, it might certainly, with great propriety, be treated as an existing indebtedness not yet due.

It was of course necessary to resort to parol evidence to prove what indebtedness, due or to become due, actually existed. In this case the account, the check and the note, with the attending circumstances, were shown, and it was clearly proved that the assignment was made for the purpose of securing the payment of the account and the $500 note. Although parol evidence could not be received to vary or extend the written language of the assignment; yet this evidence was proper as tending to show that Kellogg & Co. had assumed the payment of the $500 note, and that there was something more than a mere contingent liability. The note fell due on the 14th and 17th of January. At the time of the assignment the days of grace had begun to run, and its payment was not provided for, nor expected to be made by Swart. The urgent necessity for providing for the payment of the note no doubt prompted or hastened the assignment. It was executed with an implied if not an express agreement that Kellogg & Co. should pay the note, inasmuch as it was expressly agreed they should secure themselves for such payment, out of the proceeds of the demands then placed in their hands by Swart. Under such circumstances, the parties, I think, had a right to call it an indebtedness to become due. Their well established intention certainly ought not to be defeated, unless the law imperatively demands it, when it appears that the transaction was made in good faith and with no design to defraud others. I think the note thus provided for was, to say the least, as much an indebtedness as the check, which was held and owned by the Commercial Bank, when it had been passed to the credit of Kellogg & Co., and was not dishonored, and not due, at the time of the assignment. The note and the check were both paid by Kellogg & Co. within three days after the assignment.

The assignment of Swart did not operate as a payment, until the avails were collected and applied. It was merely collateral. It did not, nor did any agreement made at the time, suspend any right of action against other parties to the paper held by

Kellogg & Co. Whether Kellogg & Co. were bound to apply the moneys collected, *pro rata*, on the several claims, or whether they had a right, in the absence of directions from Swart, to apply the avails to such items of indebtedness as they preferred, is a question not now necessary to be decided.

I think the referee erred in his report, and that the judgment entered thereon should be reversed, and a new trial awarded.

Judgment accordingly.

[ALBANY GENERAL TERM, May 3, 1852. *Parker, Wright* and *Harris*, Justices.]