PINE & SOUTHWICK *vs.* RIKERT and others.

Where goods in a store were assigned by the owner to H. in trust for the payment of creditors, but the goods, after the assignment, still remained in the actual possession of the assignor, and they were sold by him and his former clerks, and by his wife, at private sale, and in the customary manner by retail, his name being still on the various signs of the store; and some of the goods were sold to pay an old debt not included in the first class; and no inventory was made of the assigned goods, nor was there any list of the creditors; and the assignee made no sales himself, nor did he give any reason for suffering the property to remain under the control, and subject to the disposal of the assignor; *it was held* that these were most suspicious circumstances; and that the conduct of the parties to the assignment was strong to show that the whole transaction was for the purpose of defrauding the creditors of the assignor.

Notwithstanding the invalidity of an assignment, as it respects the creditors of the assignor, a sale, made by the assignee before the creditors have obtained a specific lien upon the goods, to an innocent purchaser, for a valuable consideration, is valid.

It will be considered as effected under the authority of the original proprietor, who has still the right to sell the property.

Pine *v.* Rikert.

But where the assignee, after executions against the assignor had been delivered to the sheriff, sold the assigned property to the plaintiffs, in one lot, at a reduction of fifty per cent from the prime cost, the amount of the purchase not being known to either of the parties, at the time, and no money was paid by the plaintiffs, but they gave their note for the price of the goods as eventually ascertained, not, however, until after the goods had been levied on by the sheriff, under the executions; *Held,* that the plaintiffs were not entitled to be considered innocent purchasers, for a valuable consideration.

APPEAL by the defendants from a judgment entered at a special term, upon the verdict of a jury. The action was brought to recover damages of the defendants for wrongfully taking from the possession of the plaintiffs, and carrying away, divers goods and chattels claimed to belong to them. The defendants justified the taking of the goods, under and by virtue of an execution issued to the defendant Rikert, as sheriff of the county of Dutchess, upon a judgment in the supreme court in favor of L. O. Wilson and others against Joseph Wright; also under an execution on a judgment in favor of G. P. Lord and S. N. Brown, against said Wright; the defendants insisting that the goods were the property of the said Wright, at the time of the levy, and in his possession, in the store occupied by him, in Poughkeepsie. The plaintiffs claimed to have purchased the goods from the assignee of Wright, previous to the levy thereon, under the executions. The cause was tried at the Dutchess circuit, in December, 1854, before Justice DEAN and a jury. It appeared in evidence that on the 30th November, 1853, Joseph Wright made an assignment of his property, including a store of dry goods in Poughkeepsie, to Russel Heath. On the night of January 16, 1854, Heath sold the store of goods to the plaintiffs. Early the following morning the goods (while remaining in the same store) were levied upon by the defendant Rikert, sheriff of Dutchess county, by virtue of an execution, duly issued and delivered to him, January 13th, 1854. No proof was given of any consideration having passed between the plaintiffs and Heath, except that a note was taken for the goods the 18th of January, the *day after the levy.* The inventory of the goods was not footed up till after the levy. From the date of the assignment to the time of the trial, Wright, the assignor, remained

Pine *v.* Rikert.

in the store selling goods, and his signs were up both on the outside and inside of the store, until after the levy, just as they had been before the assignment, and no other signs were put up; the goods all the time remaining in the same store. At the time of the levy, Wright, the assignor, and one of the clerks he had in his employment before the assignment, were in the sole and exclusive possession of the store of goods. From the time of the assignment to the time of the alleged sale to the plaintiffs, a period of six weeks, the goods were sold at retail, and the plaintiffs had knowledge of the fact. After the assignment, the assignor had in his possession, at his boarding house, a large quantity of valuable dry goods, taken from his store and sold at retail by his direction. Chattel mortgages for $8000 were held by the assignor and one of the plaintiffs, which were not transferred to the assignee under the assignment. No schedules of assets or liabilities were ever furnished by the assignor. The assignee and both of the plaintiffs were in the first class of preferred creditors. The store of goods sold to the plaintiffs by the assignee *cost* $5981.80. The plaintiffs *bought them* for $2990.90. The verdict of the jury was for the *full amount* of the cost of the goods taken by the sheriff and interest.

*H. & M. Hale,* for the appellants. I. The execution against Wright was a lien upon the goods in the possession of the assignee under the assignment, from the date of its delivery to the sheriff, January 13, 1854, if the assignment was fraudulent. (2 *R. S.* 137, 4*th ed.* 319, § 1. *Id.* 365, 4*th ed.* 613, § 13.) The only exception to the rule that the goods of the execution debtor are bound from the time of the delivery of the execution to the sheriff, is that specified in the following provision of the revised statutes : " The title of any purchaser in good faith of any goods or chattels, acquired prior to the actual levy of any execution, without notice of such execution being issued, shall not be divested by the fact that such execution had been delivered to an officer to be executed before such purchase was made." (2 *R. S.* 366, 4*th ed.* 613, § 17.) In order to bring themselves within the protection of this section, the *onus* was on the plaintiffs to

prove affirmatively, 1. That they were "purchasers in good faith." 2. That they had no "notice of the execution being issued." (*Ray* v. *Birdseye*, 5 *Denio*, 619, 625. *Randall* v. *Parker*, 3 *Sandf. S. C. R.* 69, 74, 75.) The plaintiffs put in no testimony on either of these points. They did not, therefore, bring themselves within the exception of the 17th section. Only he who pays a valuable consideration, at the time of the purchase, and before an actual levy, is a "purchaser in good faith." (*Ray* v. *Birdseye, supra. Coddington* v. *Bay*, 20 *John.* 637. *Root* v. *French*, 13 *Wend.* 572.) In this case no consideration passed till after the levy, nor till after the plaintiffs had notice of the levy. They were therefore neither "purchasers in good faith," nor "without notice of the execution being issued." The court below erred, therefore, in refusing to charge as requested; and if the assignment is void, the defendants are clearly entitled to a reversal of judgment.

II. The assignment was void on its face; the fourth trust being illegal. The only purpose for which assignments with preferences are allowed is the payment of the assignor's debts. (*Griffin* v. *Barney*, 2 *Comst.* 371.) In this case the assignee is directed to pay the respective debts of the assignor's "creditors," and if the assets are not sufficient to pay "all said debts," then "such debts" are to be "paid ratably." This language must be construed according to its plain import, and the words must be understood in their ordinary and popular sense, even though they do not express the meaning of the parties. The court is bound to presume that the parties intend what the language they use fairly imports, when interpreted upon this principle. (*Chitty on Cont. pp.* 75, 79, 81, 87, *marginal paging. Story on Cont. pp.* 562, 564, *and notes and cases cited. Stohecker* v. *Farmers' Bank*, 6 *Barr*, 41. *Benjamin* v. *McConnel*, 4 *Gilmer*, 536. *Willes, C. J., in Parkhurst* v. *Smith, Willes' R.* 532. *Lord Ellenborough in Roberts* v. *French*, 4 *East*, 135. *Mallan* v. *May*, 13 *M. & W.* 511, 517. *Guillian* v. *Davie*, 2 *Cr., M. & R.* 61, 71. *Lord Downer* v. *Knight*, 1 *Taunt*, 417. *Lord Kenyon in Aguilar* v. *Rogers*, 7 *T. R.* 423. *Bronson, J., in Goodrich* v. *Downs*, 6 *Hill*, 441. *Wal-*

Pine v. Rikert.

worth, Ch., in Cunningham v. Freeborn, 3 Paige, 564. Bronson, J., in Griffin v. Barney, 2 Comst. 371. Morey v. Hayman, 10 Verm. 567. Gray v. Clark, 11 id. 583.) The assignment being void on its face, the goods assigned were liable to seizure even in the hands of a bona fide purchaser, claiming under the assignment. (Ames v. Blunt, 5 Paige, 13.)

III. Assignments of this kind are upheld only in cases of actual insolvency on the part of the assignor. (Van Nest v. Yoe, 1 Sandf. Ch. 4.) Yet there is no allegation of the assignor's insolvency, in the assignment, nor any proof of it in the case. The court erred, therefore, in refusing to charge according to the 11th request.

IV. At the very time of the levy, Wright, the assignor, and a clerk he had had before the assignment, were in "actual" and exclusive possession of the store of goods. From the date of the assignment up to that time, there had been no "actual and continued change of possession." In the language of the statute, this is "conclusive evidence of fraud," as it was not "made to appear" that either the assignment or the sale to the plaintiffs was made in "good faith" and without fraudulent intent. (2 R. S. 136, 4th ed. 317, § 5. Randall v. Parker, 3 Sandf. S. C. 69. Butler v. Stoddard, 7 Paige, 163. Wilson v. Ferguson, 10 How. Pr. R. 175. Randall v. Cook, 17 Wend. 53. Hanford v. Artcher, 4 Hill, 271. Stevens v. Fisher, 19 Wend. 181. Cole v. White, 26 id. 511. Connah v. Sedgwick, 1 Barb. S. C. R. 210. Emerson v. Hyde, 8 Verm. R. 352. Williams, C. J., in Hall v. Parsons, 15 id. 358.) The court therefore erred in refusing to charge as requested in request 12th. And the judgment should be reversed.

V. The charge of the court was erroneous in relation to the effect of retailing the goods on the part of the assignee with the knowledge of the plaintiffs. (Hart v. Crane, 7 Paige, 37.) The above case is cited and approved in Connah v. Sedgwick, (1 Barb. S. C. R. 210,) and by Gardiner, J., in Nicholson v. Leavitt, (2 Selden, 510.)

VI. The court erred in refusing to charge according to request 7th. The evidence of the witnesses was of a character

to make such a charge proper. And the soundness of the legal position contained in the request is too obvious to require argument.

VII. The court erred in refusing to comply with the 8th request to charge. There was evidence of the delivery, in Cleveland, Ohio, of a large amount of personal property to the plaintiff Pine, and Wright, the assignor, in July or August, 1853, which was covered by mortgage to one of the plaintiffs and the assignor; and it was in proof that no mortgage securities on property in Cleveland were delivered to the assignee.

VIII. The court erred in excluding the testimony offered as to the price the goods brought at the sheriff's sale. (1.) The witness Wixson had testified substantially, that the goods on that sale brought their full value. The question as to what the goods actually brought, then, was necessary in order to ascertain their fair value, in the witness' opinion. (2.) It was also in itself proper evidence to go to the jury, both on the question of good faith in the sale to the plaintiffs, and on the question of damages. (*Whitehouse* v. *Atkinson*, 3 *C. & P.* 344. *S. C.* 14 *Eng. Com. Law*, 339.) (3.) The court below erred likewise in excluding the testimony of the witness Hopkins.

IX. The defendants offered secondary evidence of the contents of certain mortgages, proved to be on file in Cleveland, Ohio. One of the plaintiffs and the assignor were the mortgagees. The mortgages were on file at the time of the assignment. The assignee testified that no such mortgages were delivered to him under the assignment. Notice had been given to the plaintiff Pine to produce the original, he being one of the mortgagees. By the laws of Ohio, the original or a duplicate is required to be kept on file in the recorder's office. The evidence was offered with a view to show that property to a large amount was fraudulently withheld from the assignee with the knowledge of the plaintiffs. (1.) The very fact that the mortgages were on file in a foreign state, and were required by law to be kept there was sufficient to justify the admission of secondary evidence of their contents. (1 *Greenl. Ev.* § 91. *Alivon* v. *Furnival*, 1 *C., M. & R.* 277.) (2.) Notice having been

Pine v. Rikert.

given to the plaintiff Pine to produce the original, secondary, evidence of its contents should have been admitted. (1 *Greenl. Ev.* § 560, note 1 *and cases there cited. Id.* § 485, *note* 4 *and cases there cited.*)

X. The whole current of testimony in the case was such as to leave no doubt that the original intent of the parties to the assignment was fraudulent, and that the plaintiffs must have had notice of the fraud before they purchased. The verdict should therefore be set aside as contrary to evidence. (*Randall* v. *Parker*, 3 *Sandf. S. C. R.* 69.)

*J. F. Barnard*, for the respondents. I. The justice was right in refusing a nonsuit as to the defendants Hale and Miller ; they have indemnified the sheriff for taking the property. (5 *Denio*, 92. *Selden's Notes, No.* 5, *p.* 6.)

II. The plaintiffs acquired a perfect title to the property in question from the assignee of Joseph Wright, and their title cannot be affected by any fraud between the assignor and the assignee, unless knowledge thereof in the plaintiffs is shown. (10 *John.* 184. 1 *Barb. Ch. R.* 220. 4 *Sandf.* 552. 2 *Comstock*, 365. *Anderson* v. *Roberts*, 18 *John.* 515. 4 *Hill*, 158. 11 *Wend.* 548. 1 *Barb. Ch. R.* 220.)

III. An assignment in trust cannot be invalidated by subsequent acts of the assignee, unless such acts establish an original fraudulent intent, (6 *Barb.* 91 ;) and then the plaintiffs' title would not be affected, without notice.

IV. Selling goods by retail, after assignment, does not render an assignment void. (7 *Paige*, 37.)

V. The sale by the assignee, to the plaintiffs, was complete and perfect before the levy by the sheriff. (5 *Denio*, 379. 13 *John.* 294. 7 *Cowen*, 85.)

*By the Court*, S. B. STRONG, J. There is no valid objection to the provisions of the assignment. The direction to pay "the debts" of the creditors of the assignor is in equivocal terms. The debts of a person may be such as are due to him, although the more usual signification is those owing by him.

It is not a palpable violation of the literal meaning of the words to apply them to the debts due to the persons designated, and we are therefore authorized to look to the scope of the entire instrument, for their interpretation. The manifest design is to pay the debts to the creditors, and that must control the construction of the doubtful phrase.

The evidence of the subsequent conduct of the parties to the assignment was strong to show that the whole transaction was for the purpose of defrauding the creditors of Wright the assignor, and it seems to have been so considered by the learned judge. The goods remained in the actual possession of such assignor; they were sold by him and his former clerks at private sale, and in the customary manner, by retail. His name was still upon the various signs of the store, and was so when replaced by that of the assignee. Some of the goods were sold to pay an old debt not included in the first class. His wife sold others, and under a direction from him to sell to a young lady any thing she might want. The assignee was examined as a witness, and it does not appear from his testimony that he sold a single article until he made the alleged sale to the plaintiffs; nor does he give any reason for suffering the property to remain under the control, and subject to the disposal of the assignor. No inventory was made of the assigned goods, nor was there any list of the creditors; and notwithstanding these most suspicious circumstances there was no affirmative evidence of good faith.

Notwithstanding the invalidity of the assignment as it respected the creditors of the assignor, a sale, made by the assignee before they had obtained a specific lien upon the goods, to an innocent purchaser, for a valuable consideration, would be valid. It is considered as effected under the authority of the original proprietor, who had still the right to sell the property. Were, then, the plaintiffs innocent purchasers of the goods in question, and for a valuable consideration? If they were, as the sale to them was before an actual levy under the execution produced by the defendants in their justification, they were entitled to the verdict which was rendered in their favor.

Pine v. Rikert.

The plaintiffs were two of the four preferred creditors. One of them (Pine) had been previously concerned with the assignee as indorsers for the same person, to a considerable extent. Both were several times in Wright's store after his assignment; and while it was under his management the goods were sold to the plaintiffs, after executions against the original proprietor had been delivered to the sheriff, in one lot, at fifty per cent reduction from the prime cost, and comprised the entire remaining valuable stock. And the affair was managed so hastily that at the time of the alleged delivery the extent of the purchase was not known to either of the parties. The design to prevent a levy under the executions was palpable. If the plaintiffs had not at least doubted the validity of the assignment, why was their purchase made at that particular time, with so much haste and under such unusual circumstances?

No money was paid by the plaintiffs, at any time. They gave their note for the price of the goods, as eventually ascertained, but it was after the levy had been made, and that must have been known to them. They did not wait (as prudent men would have, ordinarily, done) to ascertain whether there would not be a failure of title; nor did they claim any credit by reason of Wright's indebtedness to them, which had been provided for in the assignment. Probably they had been advised that in order to defeat the execution they should advance some new and valuable consideration.

The judge was requested by the defendant's counsel to charge the jury that it was incumbent upon the plaintiffs to show themselves bona fide purchasers from the assignee, in order to protect themselves from the lien of the execution delivered to the sheriff before the sale; that in order to do this they must show that they had, before the levy, paid a valuable consideration for the goods; and that not having shown this they could not recover if the jury should believe that the original assignment was fraudulent. He refused so to charge. He had before instructed the jury that the sale to the plaintiffs was invalid if there had been fraud in or under the assignment, known to them, or if it had not been completed by a delivery, previous to

the levy under the execution. He instructed them, however, that the requisite delivery had been proved. He had said nothing as to the necessary requisite to the validity of the sale, of the payment of a valuable consideration, or what the law deems an equivalent. The jury may have inferred that there was no necessity for the advance of a new and valuable consideration, to sustain the sale. The request of the defendant's counsel, so far as it related to the consideration, was probably too broad, and their exception to the judge's refusal to charge conformably to it, cannot be sustained. But it seems to me that the jury must have rendered their verdict under a misapprehension of the law. If not, it is against the weight of the evidence.

The verdict should be set aside, and there should be a new trial. Costs to abide the event of the suit.

[Dutchess General Term, April 8, 1856. *Brown, S. B. Strong* and *Rockwell,* Justices.]