WRIGHT and others *vs.* BOUGHTON and others.

The defendants were common carriers from Lewiston to Niagara Falls by trains and wagons, but had no interest in, or connection with, any of the carrying business or companies beyond the falls. The Buffalo and Niagara Falls Rail Road Company carried goods and passengers between the falls and Buffalo, and goods destined for Detroit and places on the Michigan Central Rail Road were, at Buffalo, usually shipped upon some boat to Detroit, &c. The course of business, in this respect, was generally known. The defendants received from the plaintiff, at Lewiston, two quarter casks of brandy, and gave the following receipt: "Received, Lewiston, Aug. 12, 1852, from W., C. & Co. of, &c. the following packages of goods on board the L. & B, R. line, in good

order, to be delivered in like good condition." In the left hand margin, under this, was "Israel Kellogg, Kalamazoo, Mich. M. C. R. R." and opposite, on the right hand, "1 qr. cask brandy." Below this address was the following: in the left hand margin, "McCrea & Morton, Battle Creek, Mich. M. C. R. R." and opposite, at the right hand, "1 qr. cask brandy." Shipping bills were signed by W., C. & Co. corresponding with this receipt. Cards were put upon the casks, marked upon one, thus: "Israel Kellogg, Kalamazoo, Mich. M. C. R. R." and upon the other, "McCrea & Morton, Battle Creek, Mich. M. C. R. R." The casks of brandy were duly delivered by the defendants to the Buffalo and Niagara Falls Rail Road Co. at the falls, and that company transported them to Buffalo and shipped them on board a steamer of the Michigan Central Rail Road line, and the steamer and brandy were lost and sunk, in Lake Erie. *Held* that the receipt, signed by the defendants, did not contain any agreement to transport the casks of brandy to Kalamazoo or Battle Creek, but that it was only intended to embrace the route occupied by them as common carriers, the address being incorporated in the instrument merely for the purpose of identification; and that the defendants were not liable for the loss which occurred after the property had passed out of their hands.

APPEAL from a judgment entered upon a verdict. The questions came up upon exceptions taken on the trial. It was alleged in the complaint that the defendants were common carriers between Lewiston, in New York, and Battle Creek and Kalamazoo, in Michigan. That in August, 1852, the plaintiffs entered into a contract with the defendants to carry, transport and deliver safely, two quarter casks of brandy, one of them to be delivered at Kalamazoo, and the other at Battle Creek, in Michigan, in good order and condition. That the said casks of brandy were delivered to the defendants, at Lewiston, so to be transported and delivered as aforesaid. Averment of neglect to transport and deliver, and of. loss, &c. There were other counts stating that the defendants were common carriers between Lewiston and Buffalo, and also between Lewiston and Detroit, and that agreements were made to carry the brandy from Lewiston to Buffalo, and also from Lewiston to Detroit, with averments of neglect and loss. The defendants put in issue the allegations in the respective counts, and alleged that they received the casks of brandy at Lewiston, to be by them transported from Lewiston to Niagara Falls, and to be there delivered to the Buffalo and Niagara Falls Rail Road Company;

Wright *v.* Boughton.

and averred performance. They also alleged that they carried the brandy to Buffalo and delivered it to the Michigan Central Rail Road Company; that it was shipped on board the steamer Atlantic, to be transported to Detroit; that the Atlantic and brandy were, on the trip, lost and sunk.

The plaintiffs were partners, and joint owners of the brandy. The defendants were partners in transporting goods and passengers between Lewiston and Niagara Falls by wagons. The defendants proved, upon the trial, the following instruments:

"Received, Lewiston, Aug. 12, 1852, from Wright, Clark & Co. of Queenston, C. W., the following packages of goods on board the L. & B. R. line, in good order, to be delivered in like good condition.

Isaac Kellogg,
   Kalamazoo,
      Mich.  } 1 Qr. Cask Brandy.
  M. C. R. R.

Also for

McCrea & Morton,
  Battle Creek, Mich. } 1 Qr. Cask Brandy.
   M. C. R. R.

             R. H. Boughton."

Also a shipping bill.

"Shipped, Lewiston, August 12, 1852, in good order, and so to be delivered, to wit:

One qr. cask of brandy, marked Israel Kellogg, Kalamazoo, Michigan.

  Freight to Falls $0.38.

M. C. R. R.       Wright, Clark & Co."

"Shipped, Lewiston, August 12, 1852, in good order, and so to be delivered, one qr. cask of brandy, marked McCrea & Morton, Battle Creek, Michigan.

M. C. R. R.       Wright, Clark & Co.
     Freight to Niagara Falls $0.38."

The shipping bills were in the handwriting of the plaintiffs, excepting the words "freight to the Falls," which were written

by the defendant Boughton when he forwarded the bills to the falls. The quantity and value of the brandy were proved. Cards were put upon the casks, marked upon one thus: "Israel Kellogg, Kalamazoo, Mich., M. C. R. R.;" upon the other, "Mc-Crea & Morton, Battle Creek, Michigan, M. C. R. R." Kalamazoo and Battle Creek are on the line of the Michigan Central Rail Road. The casks and brandy were duly delivered by the defendants to the Buffalo and Niagara Falls Rail Road, at the falls, and that company duly transported them to Buffalo, and shipped them on board the Atlantic, on the Michigan Central Rail Road line, and the Atlantic and brandy were lost and sunk in the lake. There was no connection or interest in business between the defendants and any other company or line. Their business was to carry goods to the falls, to the Buffalo and Niagara Falls Rail Road, and receive goods at the falls and carry them to Lewiston; and such was the general understanding.

When the plaintiffs rested, the defendants asked for a nonsuit, assigning various grounds. The motion was denied, and the defendants excepted. The defendants requested the court to charge, 1st. That the receipt was no proof that the defendants were common carriers only from Lewiston to the falls, and that they must find a verdict for the defendants; 2d. That if the jury found that the defendants carried the goods from Lewiston to Niagara Falls, so that they might be forwarded by the Buffalo and Niagara Falls Rail Road Company, as directed in the shipping bill, then they must find for the defendants. Refusal and exception. The court directed the jury to find a verdict for the plaintiffs, and the defendants excepted. Verdict for the plaintiffs, and appeal by the defendants.

*F. P. & A. G. Stevens,* for the appellants.

*D. Tillinghast,* for the respondents.

*By the Court,* MARVIN, J. It is claimed by the plaintiffs, that the defendants entered into a contract to carry and transport the brandy, one cask to Battle Creek and the other to

Kalamazoo, Michigan, and that such contract was evidenced by the instruments dated August 12. One of these instruments was signed by Boughton—(it is conceded that if he became liable, all the defendants were liable)—and was delivered to the plaintiffs; the others were signed by the plaintiffs, and were delivered to the defendants. It is claimed that these instruments constituted the contract between the parties. What do these written instruments prove? In endeavoring to ascertain their meaning, and in giving construction to them, we should understand the subject to which they relate, and the circumstances connected with their making. We learn the facts thus existing *aliunde*. The plaintiffs had two casks of brandy at Lewiston, the business residence of the defendants, and desired that they should be transported to certain places in Michigan. The defendants were common carriers from Lewiston to Niagara Falls, a distance of some seven miles, by trains and wagons. The Buffalo and Niagara Falls Rail Road Company is a corporation engaged in carrying goods and passengers between the falls and Buffalo, a distance of over 20 miles. Goods at that time destined to Detroit and places on the Michigan Central Rail Road were, at Buffalo, shipped upon some boat to Detroit, &c. The defendants had no interest in, or connection with, any of the carrying business or companies beyond the falls. Their business was confined exclusively to carrying passengers and goods between Lewiston and Niagara Falls. These facts and the course of business were generally known, and undoubtedly known to the plaintiffs. The defendants gave a receipt, "Received, Lewiston, Aug. 12, 1852, from Wright, Clark & Co. of Queenston, C. W., the following packages of goods on board the L. & B. R. line, in good order, to be delivered in like good condition." In the left hand margin, under this writing, we have "Israel Kellogg, Kalamazoo, Mich., M. C. R. R." and opposite to this, at the right, "1 qr. cask brandy." Below the above address we have, in the left hand margin, "McCrea & Morton, Battle Creek, Mich., M. C. R. R.," opposite to this at the right, "1 qr. cask brandy." These addresses in the margin are the same as those upon the cards put upon the casks by the plain-

tiffs. The receipt acknowledges that the casks were received in good order, " to be delivered in like good order ;" but it is not declared to whom or where the delivery is to be made. In a bill of lading the place where, and person to whom, the delivery is to be made, are usually specified or clearly indicated. (*See the form in Abbott on Shipping*, 322.) Sometimes the place of delivery and the person to whom the delivery is to be made, are indicated by a reference to the address on the margin.

In this case there is no such reference when speaking of the delivery. There is a reference in the body of the receipt, "the following packages of goods," and we find that they are "1 qr. cask brandy, also for 1 qr. cask brandy," and these specifications of the articles are connected with the addresses in the margin and the indication of the mode of transport in Michigan, viz. M. C. R. R. In my opinion this instrument does not contain any agreement to transport the cask of brandy to Kalamazoo or Battle Creek; no such agreement is *expressed.* It can only be inferred from the fact that it contains the address or direction, copied from the direction upon the respective cards put upon the casks. These were copied into the receipt for the purpose of identifying the " following packages of goods." Suppose in the body of the receipt the language had been the packages of goods *marked* as follows, there would then have been no doubt of the meaning of the instrument, and it would not have been insisted that the defendants were liable. (6 *Hill*, 157.) In my opinion the instrument should be so construed; that is, the address, &c. was incorporated in the instrument for the purpose of identification, and the parties had no idea that the defendants were entering into a contract to transport the casks of brandy beyond the route occupied by them as common carriers.

This view is greatly strengthened, if not rendered conclusive, by consulting the shipping bills signed by the defendants and delivered to the plaintiffs. Thus, " Shipped, Lewiston, August 12, 1852, in good order, and so to be delivered, to wit : one qr. cask brandy, *marked* Israel Kellogg, Kalamazoo, Michigan, M. C. R. R." Here we have the reference to the address

Wright *v.* Boughton.

clearly for the purpose of identification. These shipping bills were sent along with the goods as indicating, to the different carriers, the route the goods were to take and their destination.

In *Van Santvoord* v. *St. John,* (6 *Hill,* 157,) the receipt given by the carrier was like the one in the present case, with this difference. In that the word *marked* preceded the address as copied into the receipt. In that case the carrier transported goods between New York and Albany. The goods were addressed to J. Petrie, Little Falls. The goods were delivered by the defendants to a canal boat, and some of the goods were purloined. The supreme court held that the defendants were liable; that by their contract they were bound to transport the goods to Little Falls. (*See the case,* 25 *Wend.* 660.) The court for the correction of errors reversed the judgment, and held that the defendants were only bound to carry the goods safely over their route and deliver them to the next carrier. And the court held that evidence of the custom and course of the carrying business was proper. The case is an authority for the views I have taken. There was no express agreement that the defendants should transport the goods to the place designated in the address, and such agreement should not be inferred, or rather the written instruments should not, under the circumstances disclosed, be construed as containing such agreement. The judgment should be reversed, and there should be a new trial; costs to abide the event.

[ERIE GENERAL TERM, September 8, 1856. *Bowen, Greene* and *Marvin,* Justices.]