Marvin, J.
The learned justice, at the special'term, decided that the assignment was fraudulent and void as to thes creditors of the assignors, and that the assignment, upon its face, furnished the evidence of the fraud. It will be necessary to examine the assignment with .care, as it contains the provisions and evidence relied upon to sustain the judgment. It was made December 13, 1854, by S. Y. Talcott of Albany, and H. H. Hale of Buffalo, as partners, and also as individuals. It recites that they are justly indebted, as well individually as copartners, in sundry considerable sums of money which they have become unable to pay and discharge with punctuality or in full, and being desirous of making a fair and equitable distribution of their separate and individual, and also their copartnership, property and effects, among their respective individual and their copartnership creditors; and then follows the sale and trans *553 fier of their copartnership and individual property to the assignees, in trust nevertheless, and to and for the following uses and purposes. Directions are then given touching the individual property of each of the assignors, and the payment of the debts of each. To these directions there is no objection. The individual property is appropriated to the payment of the individual debts, and the residue, if any, is to be applied to the payment of the copartnership debts of the firm, in the order thereafter directed in the assignment. Then follows the trust relating to the partnership property. It is to be converted into money, the expenses, rents and taxes are to be paid, and with the residue, net proceeds and avails, the assignees are directed, first, to pay to the laborers and workmen of the assignors, residing in Albany and Buffalo, the amounts due to them respectively, for work, labor and services, done and performed for the assignors.
The first objection is made to this clause in the assignment. It is argued that the provision necessarily has the effect to hinder and delay the payment of the other creditors longer than they would have been delayed, in case the names of that class of creditors had been mentioned, with their places of residence, and the respective amounts due to each. In my opinion this objection is not sufficient to avoid the assignment. Such a provision is not unusual in assignments, and I am not aware that any objection has been made to it. Ho authority is cited. In Rathbun’s assignment there was a similar provision for the payment of clerks, mechanics and daily laborers in the employment of Rathbun at Buffalo and Hiagara Falls. (Pratt v. Adams, 7 Paige, 418.) There are also several other clauses in that assignment involving the same principle. It is true, that the question that those provisions avoided the assignment, was not raised.
Objections are taken to the provisions contained in the clauses relating to the fifth and sixth classes of creditors. As to the fifth class the direction is that, by and with the residue and remainder of the net proceeds and avails, if any there should be, the assignees shall pay and discharge all copartnership debts and demands of the said firm of Talcott & Hale, for which the *554 said parties of the second part, (assignees,) and Angelica Talcott of Albany, are severally and jointly liable, either as drawer, indorser, guarantor, or otherwise howsoever; and in case the said Andrew T. Hale shall be compelled to pay the whole or any part of two drafts for three thousand dollars each, drawn by E. B. Hale on B. H. Buckingham, and indorsed by the said Andrew, at the request of and in part for the accommodation of the parties of the first part, then the said parties of the second part shall pay to the said Andrew T. Hale the amount that he may be compelled to pay on said drafts. In respect to the sixth class the assignees are directed to pay “ the following named sums On the following named notes and drafts,” viz : twelve hundred and fifty dollars, being' the one half of a twenty-five hundred dollar note, made by Fassett & W ash burn of the city of Albany, indorsed by the assignors and discounted by Duncan, Sherman &. Co., and which note matures on or about the 9th day of January next. Six hundred and sixty-two dollars and thirty-four cents, being the one half of a draft for thirteen hundred and twenty-four dollars and sixty-nine cents, drawn by the said Fassett <fc Washburn on Baker & Smith of Providence, indorsed by the parties of the first part, and discounted by Duncan, Sherman & Co., and which becomes due and payable on the fourth day of February next. Eleven hundred dollars, being the one half of a draft for twenty-two hundred dollars, drawn by the said Fassett &■ Washburn on Peter B. Roach, and discounted by the said Duncan, Sherman <fc Co., and maturing on or about the 5th day of February next. Thirteen hundred and fifty dollars, being the amount of a promissory note, made by said Fassett & Washburn, payable to the order of, and indorsed by, the said parties of the first part, and discounted by the said Duncan, Sherman &. Co., and falling due on or about the 15th day of January next; but this last mentioned sum is not to be paid until the said Fassett & Washburn shall have surrendered up and delivered over to the parties of the second part, to be canceled, a note bearing even date with the one last mentioned, for the same amount, and maturing at the same time, *555 made by the said parties of the first part, and payable to the order of the said Fassett & Washburn.
Several objections are made to these provisions. It is insisted that the assignors have provided for the payment of debts which they did not owe. In other words, that they have devoted their property to the payment of the debts of other persons, which they, the assignors, were not liable to pay. If the assignors by the assignment, have appropriated their property to the payment of debts not owing by them, and not contracted on their account, to the exclusion and prejudice of their own creditors, it cannot be doubted that the assignment is fraudulent and void as to their creditors. There can be no dispute about the law of such a question. Counsel do not differ about it. The difference is touching the fact, and-both parties refer to, and rely upon, the assignment itself for the evidence of the fact.
After a careful examination of the pleadings and the assignment, I have come to the conclusion that the learned justice, at the special term, erred in finding, from the evidence, that the assignors had provided for the payment of any debts other than their own. The onus of showing the assignment fraudulent, was upon the plaintiff. Fraud is not to be presumed, but there must be proof of it, and the plaintiff relies upon the face of the assignment for the proof. It is said that the direction to pay certain sums upon certain notes or drafts, which notes or drafts are described as being made by other persons, is controlling evidence „ of an attempt to appropriate the property of the assignors to the payments of debts other than their own. It may be conceded that upon the production of a note made by John Doe, the presumption would be that he alone owed the debt; and in the absence of other evidence, there would be no presumption that he had contracted the debt on account of any other person, or that any other person was liable to indemnify him. But the present case differs from the case supposed. Talcott & Hale, the assignors, speak in the assignment, and their declarations are resorted to as evidence. And what do those declarations prove? They begin, by declaring, in substance, their insolvency; that they are indebted individually and as partners; that they *556 desire to make a fair and equitable distribution of their property among their creditors ; they then proceed to sell and transfer their joint and several property, upon certain trusts. No doubts arise upon the trusts relating to their individual debts. The residue, if any, of Talcott’s individual property, is directed to be applied “ to the payment of the copartnership debts of the firm above mentioned, in the order hereinafter directed and provided.” The same provision is inserted in reference to the separate debts and property of H. H, Hale. Thus far all is clear and expressed. Then follows the trust relating to the “ property and effects belonging to the said partnership or firm of Talcott <fc Hale, hereby also assigned.” The assignees are to convert the property into money, and with the proceeds pay expenses, rents, taxes, &c. and with the residue, first pay the laborers, dec. for work, &c. done for the assignors. No doubt arises here about the debt being the proper debt of the assignors. But in some of the subsequent clauses and classes of creditors, it is not clearly expressed that the debt to be paid was the debt of the assignors; and from the description of the evidence of the indebtedness, it is alleged that it is proved that the debts were not the proper debts of the assignors. In my opinion this is not a fair construction of all that Talcott & Hale have said. We must look to the whole instrument. It professes to devote their property to the payment of their debts. And it does not follow', when they specify a debt, evidenced by the note of a third person, that such debt was not their debt to pay, or that they would not be liable to the person who had undertaken to pay it, upon such payment being made. The question does not arise, as it would, if the maker of one of the notes, which the assignors direct to be paid, had paid the note, and then sued Talcott & Hale for money paid for their use. In such suit the plaintiff would be obliged to give evidence to show that they made the note for the use of Talcott & Hale. As the question now arises, Talcott & Hale purpose to pay the note made by the third person, or rather they direct that their property be applied to the payment of such debt, and the plaintiff,, a creditor, says they have no right to do this. Upon whom is the burden of *557 proof? Clearly, upon the party alleging that it is an improper appropriation of the property of the assignors. And the simple production of the notes or drafts with those clauses in the assignment in which they are described, will not prove an improper appropriation of the property of the assignors. The plaintiff should have gone further, and proved that the assignors had directed the payment of debts which they were not liable to pay, and for the payment of which they were not bound to indemnify the payors or makers of the paper.
On consulting the complaint, it will be found that it is extremely meager, touching any question of fraud. It is alleged that the assignors continued in possession of the assigned property. This is denied in the answer. The plaintiff says that he “is advised and charges that the said assignment is merely colorable, and was made with intent to hinder, delay and defraud the creditors of Talcott & Hale.” This is denied in the answer. There is no allegation that the assignors had provided for the payment of debts other than those they owed. The assignment is referred to and copied. I doubt whether the point or question we are considering ever occurred to the defendants until it was raised upon the argument at special term. However this may be, both parties rely upon the assignment as proof of their positions, or rather the plaintiff relies upon it as proving its position that the assignors have misapplied their property, and thus attempted to defraud their creditors. In my opinion, the assignment fails to prove it.
In the fifth class the assignees are directed to pay the company debts of the firm of Talcott & Hale, for which the assignors and Angelica Talcott are severally and jointly liable, as drawer, indorser, guarantor or otherwise; and in case Andrew T. Hale shall be compelled to pay the whole or any part of two drafts for $8000 each, drawn by E. B. Hale on B. H. Buckingham and indorsed by the said Andrew, at the request of and in part for the accommodation of the parties of the first part, then the assignees shall pay to the said Andrew T. Hale the amount that he may be compelled to pay on said drafts. It is argued by the plaintiff, that this provision shows an in *558 tent to hinder and delay, and also an intent to defraud. These drafts were made by E. B. Hale. They were drawn upon Buckingham. Whether they had been accepted, does not appear. They were indorsed by Andrew T. Hale, at the request of and, the assignment stated, in part for the accommodation of the assignors, and the direction is to pay A. T. Hale the amount he may be compelled to pay. It is objected that this was not the debt of the assignors, &c. I have already expressed my opinion touching this objection. It is also said that as the assignees are only to pay such amount as A. T. Hale shall be compelled to pay, the assignment contemplated a defense by A. T. Hale, and consequent delay, and that the assignees must necessarily wait the termination of proceedings against Andrew, or until the statute of limitations attaches to the demand. Until there is some evidence to show the contrary, we must suppose that the assignors were bound to indemnify Andrew, and save him harmless from his indorsement. In effect they say this, and there is no evidence to the contrary, and the onus was upon the party alleging the fraud. It is stated that the indorsement was at the request of the assignors, and in part for their accommodation. What is meant by the last clause is not very clear. If the assignors had borrowed the draft of the drawer, E. B. Hale, and requested Andrew to indorse it, they would be liable to pay Andrew any sum he should be obliged to pay. It is, however, claimed that the language, “in part for the accommodation of the assignors,” is an admission or declaration showing that they could not be liable to Andrew for the whole amount of the drafts, should he be compelled to pay the whole amount. It is clear that the indorsement was made at the request of the assignors, and in part for their accommodation, and this would constitute a good consideration for an implied undertaking to indemnify the indorser. But to my mind the most satisfactory answer to the objection is, that the assignment does not furnish satisfactory evidence that the assignors had directed the payment of debts other than those which they were bound to pay, and the burden of proving fraud was upon the plaintiff. But to return to the *559 special objection, that this provision necessarily interposed delay. The delay was not of that character condemned by the statute. The liability of Andrew T. Hale was contingent. He might not be compelled to pay any thing; and if not, then the assignees were not to pay him.
In the sixth class there is a direction to pay $1350, being the amount of a promissory note made by Fassett <fc Wash-burn, indorsed by the assignors and discounted by Duncan, Sherman & Co.; but this last mentioned sum is not to be paid until Fassett & Washburn shall have surrendered up and delivered over to the assignees, to be canceled, a note bearing even date with the one last mentioned, for the same amount and maturing at the same time, made by the assignors, and payable to the order of Fassett & Washburn. It is insisted that this provision shows the assignment fraudulent, and renders it void. That a condition is here imposed upon the creditor, which the law will not allow, and one which Duncan, Sherman & Co. were under no obligation to perform, and which it might be out of their power to perform. It is undoubtedly true that the debtor cannot make terms in his assignment which shall result to his benefit, or impose conditions upon the creditor which the law has not imposed, and which shall delay and hinder him. The positions of law, as advanced by the plaintiff’s counsel, are sound, but have they any application to the case before us 1 .The assignees are directed to pay $1350, being the amount of a promissory note made by Fassett & Washburn, indorsed by the assignors and discounted by Duncan, Sherman & Co. It may be remarked that the direction is not to pay the note, or to pay Duncan, Sherman & Co., but to pay the amount of the note. The note was to mature in about a month after the assignment was made, and Fassett & Washburn were the makers. They were a firm doing business in Albany, and the presumption was that this firm was responsible." They were liable to Duncan, Sherman & Co. and could be compelled to pay. I cannot, therefore, well understand how the assignors could have designed to hinder and delay Duncan, Sherman & Co., or how the condition could affect them, as the holders of the note. *560 If we regard this provision as designed for the benefit of Fassett & Washburn, then there can be no objection to the condition, provided the note held by Fassett <fc Washburn represented the note made by them and discounted by Duncan, Sherman & Co. If the parties exchanged notes, then the payment by the assignors, of the note made by Fassett & Washburn, would entitle them to the note they had given to Fassett & Wash-burn. The effect of the provision and condition was the same as though provision had been made for the payment of their note given to Fassett & Washburn, and nothing had been said of the note made by Fassett & Washburn and discounted by Duncan, Sherman & Co. There is nothing in the language of the assignment inconsistent with the position that the assignors and Fassett & Washburn exchanged notes; and this being so, there is no evidence of any intention to hinder, delay or defraud any one. I think the provision, including the condition, suggests this view of the case. Now we must keep in mind, constantly, that the onus of proving fraud was upon the plaintiffs, and they give no proof, aside from the assignment, and that will bear a construction entirely consistent with honesty and fair dealing; and the condition was not only proper, but without it the circumstances were such that 'the matter may have been open to the imputation of providing for the payment of the same debt twice, to the prejudice of the last class of creditors.
In the assignment it is declared that inventories of all the property assigned shall be made, with all reasonable dispatch, and be annexed and considered a part of the instrument. It is objected that these inventories were not made. I do not so understand the evidence. Cagger, in his affidavit—made evidence by stipulation—says that the schedules were made and annexed to the assignment. This affidavit ivas not to be used, except for the purpose of disproving fraud not apparent on the face of the assignment. The clause in the assignment relating to inventories does not prove fraud. It is very different from that contained in the assignments referred to by the counsel. (Averill v. Loucks, 6 Barb. 470. Riggs v. Murray, 2 John. Ch. R. *561 565.) In the present case there was no right reserved to the assignors to give future preferences.
[Erie General Term,
September 8, 1856.
In my opinion the plaintiff has failed to show fraud, in the present case. The assignment, properly understood, does not prove it, and there is no other evidence. The question is, whether the provisions of the instrument are such, that when carried out according to their apparent and reasonable intent, they will be fraudulent in their operation. We should not presume fraud from the provisions of an instrument which admits of a contrary construction. (Ward v. Tingley, 4 Sandf. Ch. R. 480. Brigham v. Tillinghast, 15 Barb. 618, 620. Jacobs v. Allen, 18 id. 550. Kellogg v. Slauson, 15 id. 56. S. C. 1 Kernan, 304. Jewett v. Woodward, 1 Edw. Ch. R. 197. Archibald v. Thomas, 3 Cowen, 284.)
The judgment of the special term should be reversed, &c.
Mtillett, J., concurred.
Bowen, P. J., dissented.
Judgment reversed.
Bowen, Mullett and Marvin, Justices.]