Robertson, J.
The prominent objections against the assignment in this case is, that by a certain construction of its terms, it contains internal evidence of fraud. It. is claimed that the direction in it, to pay Certain persons named in a schedule annexed, the sums of money which rtiay bé or become due to them irom the assignors, will enable such persons to acquire claims belonging to others, and be paid the same in full; while the direction to pay the rest of the creditors, by confining the payment to such as may become due them, excludes the payment of what was due at the time of making the assignment.
There might be some doubt whether the mere fact of naming certain persons to be preferred, provided they should become creditors, would, of itself, make the assignment fraudulent on its face, because the law does not interfere with preferences, provided the debtor does not abuse the right, so as to gain some advantage for himself. The-difficulty would be that some time must be fixed for the acquisition of the claim, or it must be left indefinite; and in either case it would postpone the settlement of the estate and operate to hinder creditors not preferred.
But in this case there is no necessity for such an inquiry;: the terms, of the assignment do not warrant the construction contended' for. By the two parts of the direction for distributing the assets of the assignors, all the creditors, by its terms, are to be provided for.. There- are three general rules of interpretation, which, applied' to this case, show that the intent on the face of the instrument was honest to creditors :• Firstly, that the general intent of the parties is to govern; Secondly, that the leaning of all constructions should be in favor of supporting, and not overthrowing, an instrument;. and, Thirdly, that fraud is not to be presumed, (Kellogg v. Slauson, 15 Barb., 56; Kellogg v.. Barber, 14 *627 Barb., 11; Barnum v. Hempstead, 7 Paige, 569; Kuhlman v. Orser, 5 Duer, 250; Bank of Silver Creek v. Talcott, 22 Barb., 561;) and assignments are subject to no different rules. (Pine v. Rikert, 21 Barb., 469.) Courts are therefore under no obligation to be astute to destroy them.
The recital in this case is that the assignors desire to distribute their property among their creditors; the last part of the direction is to distribute what remains after paying those intended in the first class, among the rest of the creditors; it could hardly be intended by the words, “may become due,” the assignors intended to exclude claims already due. One of the meanings of “become” is “ be,” and it certainly seems to be used in that sense here; it is used twice before, and must once, at least, have been there employed in that sense. By the first direction the assignees are directed to pay to creditors named in the schedule to the assignment, whose debts are due, “ so much as may “become due;” this would involve a contradiction and absurdity if “ become” implied anything more than “be.” But in the first part, by using both “ are,” and “ may become due,” the assignors meant both those past due, and existing liabilities to become due. Lexicographers make “ due” and “payable ” convertible terms, (see Worcester’s Diet.,) and so they are held to be, legally. (Allen v. Patterson, 3 Seld., 476.) It is difficult, in a single word, to express present liabilities, payable hereafter; but “ due,” and “ to become due,” have, by long usage, come to mean liabilities past due and hereafter to grow due. Besides this, no time is fixed in the instrument for the purchase of the claims ; and in such case it is to be understood as speaking as of its date; and “debts” must mean debts at its date, which were to become due afterwards. The assignment, therefore, is not fraudulent and void on this ground.
It is, however, suggested that, even if the preferred creditors were not at liberty to buy up claims to secure such preference, the assignment is void for securing debts not yet due. I have had occasion heretofore to examine this question in other cases, and, after full reflection, can *628 find nothing to justify overthrowing the settled practice in those cases. There is no law which makes a mortgage to secure a surety, by a principal in failing circumstances, void. Whatever debt can be secured by a conveyance direct^ to the surety, may be secured by one to an assignee in trust, nor is there any principle which puts a contingent liability beyond the possibility of being protected. Bor can there be any difference between protecting the surety and protecting the creditor; a principal, desirous of protecting a surety, is not bound, for that purpose, to admit his liability for a debt which he believes himself entitled to resist. The ground upon which the objection is put is fallacious; an assignment to protect a contingent liability no more hinders or delays a creditor than one to pay a debt not yet due, even if the assignees were not authorized to pay such debt before its maturity. The preference given is asserted to be priority in time, and that the assigned estate cannot be distributed until the liability is ascertained, because the assignment says it is first to be discharged. But assignees have a right to retain sufficient in their hands to meet such liability, and distribute the residue, and, after the liability is disposed of, distribute what remains. (Cunningham v. Freeborn, 11 Wend., 241; Hendricks v. Robinson, 2 Johns. Ch. R., 284.) If they refuse to do their duty in this respect, they can easily be compelled to do so by an action.
. It has also been assumed that the defendants, although denying the charge in the complaint, that the assignment in question was made with intent to hinder and defraud -creditors, do not deny the charge that it was made with intent to delay them, and this is founded upon some supposed distinction between delaying and hindering. I should suppose a person who was hindered was effectually delayed; nor do I see how a man can be delayed without being hindered. To hinder any one in his course is, necessarily, to delay him. Hot being able to perceive the distinction, I must hold that none exists. Many such pleon,asms are to be found in old English statutes, where they *629 are introduced for caution’s sake, more than with any precise idea as to what they were intended to effect.
All the objections to the proceedings in reference to the inventory filed, and the bond, are mere matters affecting the assignees, and not the assignment. The statute of 1860, (Sess. L., 1860, 594,) does not provide for the consequences of omitting to comply with its provisions ; it does not seem to have been intended to prevent assignments, but rather to protect those interested under them, and, therefore, probably was intended only to lay the foundation for an application to a Court to compel a compliance, under penalty of removal.
But the objections to the inventory are explained, the bond is shown to have been binding, and the justification of the sureties was approved by the County Judge; therefore there does not appear to be any reason for removal of the assignees and substituting a Receiver in their place.
It is not necessary to discuss the questions raised as to the lien of the attachments, as the assignment was valid.
The denial, in the affidavits of the defendants, of the demand by the Sheriff of notes, debts, credits and effects, and of the allegations of the complaint in. relation thereto, and the averment that they had no property at the time of making the inventory, other than what was mentioned in it* I consider sufficiently takes issue on the allegation that the defendants had goods, notes and other articles when the warrants were issued, and the Sheriff demanded possession of one or more of the defendants and they refused to deliver them; their fraudulent concealment, with intent that the Sheriff could not find them, if not denied, is immaterial by itself; it might make such goods liable, if not claimed by the assignee, but not those' assigned and claimed by them.
The assignment, therefore, not being fraudulent on its; face or made so by extrinsic evidence, and there being no-good cause shown for removing the assignees, or appointing a Receiver, the order made at Special Term should be reversed.
*630 Bosworth, Ch. J.
In construing an assignment of property in trust for the benefit of the creditors of the assignor, as well as other written contracts, all legal rules resorted to for the purpose of aiding in their interpretation, are subordinate to that primary rule which requires that every such instrument shall be construed according to the intention of the parties.” (Platt v. Lott, 17 N. Y. R., 478, 480; Kellogg v. Barber, 14 Barb., 11.)
When the language of an assignment can be satisfied by a construction that will support the instrument, it is well settled that a construction shall not be given that will defeat it. (Kellogg v. Slauson, 11 N. Y. R., 302, 305.)
Fraud is not to be presumed, but there must be proof of it; and the onus of proving the assignment to be fraudulent, rests on the party assailing it. (Bank of Silver Creek v. Talcott, 22 Barb., 561.)
The provision which directs the assignees oto pay to the parties named in Schedule A, hereto annexed, the sums of money, with interest, which are, or may become due to them from the parties of the first part, not exceeding, however, the sums'set opposite the names respectively of those who have a sum set thereto, if so much shall become due to them from the parties of the first part,” can be abundantly satisfied without construing it to authorize the parties named in that schedule to purchase demands, and to protect and prefer them, if purchased.
The object of the assignment, as declared by its recitals, is a division of the property of the assignors among their creditors equitably. The persons provided for by Schedule A, are only those; and the provision preferring those named in it,-includes only those who were creditors when ■the assignment was made, and they are preferred only in respect to debts then owing to them, or in respect to liabilities which they had theretofore assumed for the assignors. The words “or may become due,” when applied to actual debts then owing to any of those persons, mean debts which shall become payable thereafter; and, when applied to persons then under a contingent liability for the assignor, *631 mean, sums of money which shall thereafter become payable to them by reason of such contingent liabilities. [Kellogg v. Barber, 14 Barb., 11; Bank of Silver Creek v. Talcott, 22 Barb., 550; Allen v. Patterson, 3 Seld., 476.) Due, sometimes means payable.
The'fact that a person is protected against a contingent liability, which is, on its face, an undertaking for a third person, does not raise a presumption, when all the provisions of the assignment are considered, that the assignees have appropriated any of their property to pay debts, or indemnify against liabilities, which it was not their duty to pay or satisfy. (Bank of Silver Creek v. Talcott, 22 Barb., 555-557.)
I do not deem it important to acid anything to the observations of my brother Bobertsoh, in respect to the other objections urged against the validity of the assignment.
On the papers before us, the assignment should not be adjudged invalid, and the assignees should not be interfered with, by an injunction or Beceiver.
The order appealed from should be reversed.